# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YUNG-KAI LU, <br><br>  Plaintiff, <br><br>  v. <br><br> REX W. TILLERSON <br><br>  Defendant. | Civil Action No. 17-1028 (JEB) |

## MEMORANDUM OPINION

Plaintiff Yung-Kai Lu, proceeding *pro se*, is a citizen and resident of Taiwan. In 2015, Lu was the lucky winner of the "visa lottery" for lawful admission to the United States. Yet his victory proved hollow, as he was never granted a visa. Lu then brought this suit alleging that this 2015 visa deprivation was based on unreasonable delays on the part of the State Department, as well as on other unconnected events. As relief, Plaintiff asked this Court to compel Defendant Secretary of State to extend the time for a visa interview for his 2015 application. In now moving to dismiss, the Government asserts that it can do no such thing. According to Defendant, once the 2015 fiscal year expired, so too did the statutory authority for the issuance of Lu's Diversity Visa. State argues both that Plaintiff's claims are thus moot, thereby depriving this Court of subject-matter jurisdiction, and that his statutory causes of action fail to adequately state a claim for relief. As the case is indeed moot, the Court will dismiss it.

**I.     Background**

According to the Complaint, which the Court must credit at this stage, Plaintiff entered the Department of State's Diversity Visa (DV) program for fiscal year 2015. See ECF No. 1, ¶¶

1

19-20. Fiscal year 2015 ran from October 1, 2014, to September 30, 2015. Id., Exh. 1. Lu had previously resided in the United States and had applied (to no avail) for a Diversity Visa since 2002. His 2015 application, however, proved auspicious. Although there is an apparent inconsistency between the Complaint and the record evidence as to when Lu was notified that his application had been chosen, see Compl., ¶ 20 (stating that Lu was notified in "early October 2015" that he was selected); but see ECF No. 1-2, Exh. 1 (Notification Letter) (letter notifying Lu of selection dated May 1, 2014), there is no dispute that he was in fact an FY 2015 selectee.

In any event, the State Department notification letter informed Plaintiff that he had been selected out of the FY 2015 applicant pool for "further processing," but cautioned that "selection [did] not guarantee that [he would] receive a visa." Notification Letter. The letter went on to provide a series of instructions for Lu to follow "to increase [his] chances of possible visa issuance," which included registering with the online DS-260 Immigrant Visa and Registration Application. Id. Finally, the Department informed Lu that his case would "not be scheduled for an interview appointment until a visa number is available," and that, were an interview to be scheduled, Lu would receive notification. Id. Lu submitted his DS-260, but never received notification of an interview. (The Court notes that, although both Plaintiff and Defendant state that Lu submitted the DS-260 visa application form in October 2015, see Compl., ¶ 20; MTD at 3, the record suggests that it was in fact submitted on October 30, 2014. See ECF No. 1-2 (DS-290 Application).)

A year later, between the fall of 2015 and June 2016, Lu wrote to the U.S. Attorney General and the State Department alleging that he had been unfairly treated and unlawfully deprived of his 2015 visa. Specifically, he claimed that he had been denied a Diversity Visa for the 2015 fiscal year because of "technical" issues and "computer system glitches." Compl., ¶ 22.

2

In response to his inquiries, Lu received a July 2016 letter from the State Department stating that the "DV program for fiscal year 2015 is closed, and winning entries from that year are no longer eligible for processing." ECF No. 1-2, Exh. 2 (State Dept. Letter).

On May 24, 2017, Lu filed suit in this Court, alleging that he had "suffered the loss of his permanent visa interview to obtain [a] green card" because Defendant "did not appropriately and lawfully take [its] mandatory duties to execute and process applications under the 2015 Diversity Immigration Visa Program." Compl., ¶¶ 1-2. His Complaint attributes the 2015 delay to, *inter alia*, "cyber terrorist attacks or other computer glitches," "the earthquake in Nepal in 2014," and the State Department's "new computing systems to operate [the] visa lottery interview." Id., ¶¶ 15, 28; see ECF No. 1-2, Exh. 3 (assortment of news articles discussing 2015 technical issues with State Department visa processing). Construing Lu's Complaint liberally, as it must, the Court can discern three possible statutory bases for his claims. It appears that Plaintiff is alleging that, in failing to promptly process his application and grant an interview, the Government violated the requirements of the Administrative Procedure Act, 5 U.S.C. § 551, and the Immigration and Nationality Act, 8 U.S.C. § 1101. See Compl., ¶¶ 5, 8, 29, 37. He additionally asserts that the Court has jurisdiction to grant relief under the Mandamus Act, 28 U.S.C. § 1361. Id., ¶ 6.

Plaintiff requests that, in light of these alleged violations, the Court compel State to grant him an extension "to finalize the interview" and to add him "on the winning list in future visa lottery." Id., ¶ 46. He also asks for $60,000 as compensation for "government neglect." Id. In December 2017, Defendant filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), to which Lu filed an opposition in January. See ECF Nos. 16, 18.

**II.     Legal Standard**

As the Court essentially relies on the question of subject-matter jurisdiction, it articulates solely the standard under Rule 12(b)(1) below.

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the Court indeed has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, and although pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350 (2d ed. 1987)) (alteration in original). In policing its jurisdictional borders, the Court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the record or resolve disputed ones. See Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.     Discussion**

The Court first gives a brief overview of the Diversity Visa program before turning separately to the question of its jurisdiction over Lu's claims and his request for other relief, including money damages.

   A.  Diversity Visa Program

The Diversity Visa program provides a limited number of visas to individuals from countries that historically have had low rates of immigration to the United States. See 8 U.S.C. § 1153(c). A visa granted under the system enables the recipient to move to the United States as a lawful permanent resident, and thus to live and work legally in this county. To be eligible for these visas, applicants must have at least a high-school education or two years' work experience in an occupation that requires at least two years of training or experience. Id., § 1153(c)(2). To apply, eligible individuals must complete a DV petition before a specified filing deadline. Once that date passes, the petitions are numbered according to the order in which they are received and are then randomly re-ordered by a computer. Id., § 1153(e)(2); 22 C.F.R. § 42.33(c). The State Department then selects a quantity of petitions estimated to result, after a winnowing process, in the issuance of all authorized Diversity Visas. See 22 C.F.R. § 42.33(c). These initially selected applicants – often referred to as "lottery winners" – are in turn notified of their selection. See Smirnov v. Clinton, 806 F. Supp. 2d 1, 6 (D.D.C. 2011) (discussing details of "three-step process in administering the DV lottery: numbering, random re-ordering, and selection"), aff'd, 487 F. App'x 582 (D.C. Cir. 2012).

Yet the moniker "lottery winner" is a bit misleading. Selection of an applicant's petition does not ensure that he will in fact receive a visa, as the total number of lottery winners exceeds the number of Diversity Visas available under the program. Id. at 7 (stating that "nearly half of

5

the original 100,000 lottery winners do not receive a visa"). A lottery winner thus obtains not the right to a visa, but "only the right to apply to receive a visa through the DV program." Coraggioso v. Ashcroft, 355 F.3d 730, 732 (3d Cir. 2004), as amended (Jan. 29, 2004) (emphasis added). The path from selectee to visa-holder, moreover, is lengthy and rife with bureaucratic brambles. Applicants must submit numerous documents to the National Visa Office (including, among others, a passport, a birth certificate, police certificates, court records, prison records, military records, and evidence of either education or work experience), must schedule and attend a visa interview at a United States embassy, and must clear a series of security investigations. See 8 U.S.C. § 1154. And, as is especially relevant for this case, they have only a short window in which to accomplish these steps.

According to the statute, "Aliens who qualify, through random selection, for a [diversity] visa . . . , shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II). Under State Department regulations, Diversity Visa petitions are automatically revoked, and the issuance of visas halted, after midnight of the final day of the relevant fiscal year. See 22 C.F.R. §§ 42.33(a)(1); (f). Regardless of where they are in the process, those without a visa in hand at the end of the fiscal year will thus not be granted admission under that year's DV program. Instead, "[t]hose not receiving visas must, with sisyphean frustration, go back to the starting line and reapply to the lottery." Coraggioso, 355 F.3d at 732.

B. Mootness

The threshold, and ultimately dispositive, question before the Court is whether Lu's alleged entitlement to his 2015 visa is now moot. A case is considered moot either "when the issues presented are no longer live or the parties lack a legally cognizable interest in the

6

outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969) (internal quotation marks omitted). Because federal courts may adjudicate only "Cases" or "Controversies," U.S. Const. art. III, § 2, they have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [them]." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Put simply, if a federal court's decision "cannot affect the rights of litigants in the case," the court does not have jurisdiction over the matter. North Carolina v. Rice, 404 U.S. 244, 246 (1971).

The Government asserts that this matter no longer presents a live case or controversy. According to Defendant, "[T]he period of Plaintiff's eligibility for the DV lapsed as of September 30, 2015," and there is "no legal authority for the [Government] to issue a [Diversity Visa] after the end of the relevant fiscal year." MTD at 3. In other words, as there is no viable route to the relief Lu seeks, the Court must dismiss his claims as moot. Id.

Lu responds that his suit is alive and well. He relies, in large part, on his general contention that the "Department of State could" have "finish[ed] all interviews" for the 2015 fiscal year, and that the delays in visa processing were the result of internal technical difficulties. See Opp., ¶ 28 (emphasis added). These factors, he argues, mean that his claims are not in fact moot and that the Court has the equitable authority to "change or extend the deadlines" for the DV program. Id., ¶ 80. He additionally cites to the Court's jurisdiction under the APA to review "final" agency actions, asserting that because "Department of State admitted their action of process[ing] [the] DV lottery is final," the Court has jurisdiction to review its delay. Id., ¶ 45. Finally, Lu cites to a number of cases addressing federal courts' jurisdiction over the

7

Government's failure to timely adjudicate an application for "adjustment of status" – an immigration process distinct from the granting of a Diversity Visa. Id., ¶¶ 52-53.

Unfortunately for Lu, the Government's position is correct. No matter the merits of Plaintiff's application or the existence of an underlying duty to timely adjudicate it, this Court cannot act if the remedy he seeks is illusory. Examining the immigration laws governing the Diversity Visa program, the Court concludes that it has no authority to order relief for Lu's claims arising from his 2015 DV application.

The INA provides that applicants who are selected under the lottery system "shall remain eligible to receive [a DV] visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II). The governing regulations in turn state that "[u]nder no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility." 22 C.F.R. § 42.33(a)(1). Put otherwise, when midnight strikes at the end of the fiscal year, those applicants without visas are out of luck. Although this deadline may appear "unforgiving, this strict interpretation of the diversity visa statute has been adopted by every circuit court to have addressed the issue." Mogu v. Chertoff, 550 F. Supp. 2d 107, 109 (D.D.C. 2008); see also Mohamed v. Gonzales, 436 F.3d 79, 81 (2d Cir. 2006) ("[W]e are compelled . . . to apply the unambiguous language of the operative statutory framework."); Coraggioso, 355 F. 3d at 734 (holding that statute "unambiguously indicates Congress's intent to impose a time deadline on an applicant's eligibility"); Carrillo-Gonzalez v. INS, 353 F. 3d 1077, 1079 (9th Cir. 2003) (referencing "[c]ongressionally-mandated, one-year deadline of the DV Lottery Program"); Nyaga v. Ashcroft, 323 F.3d 906, 914 (11th Cir. 2003) (holding that statute "plainly means" that those "who have been randomly selected to qualify for a visa under the diversity visa program

cannot be issued a visa after midnight of the final day of the fiscal year for which they were selected"); Iddir v. INS, 301 F.3d 492, 501 (7th Cir. 2002) ("Based on the statutory deadline set by Congress, the INS lacks the statutory authority to award the relief sought.").

Although this Court has sympathy for those applicants who do not make the fiscal-year cut off, it follows suit. Plainly stated, the mandamus and declaratory relief sought by Lu – the *nunc pro tunc* processing of his Diversity Visa application after the relevant fiscal year – is statutorily barred.

That conclusion is not altered, moreover, by the fact that Lu had completed certain steps toward fulfilling his requirements for selection. In Keli v. Rice, 571 F. Supp. 2d 127 (D.D.C. 2008), another court in this district addressed the identical question of whether a plaintiff who had "won" the lottery but never received a visa could challenge the State Department's delay. In that case, conversely, the plaintiff had made it significantly further through the process than Lu: he had been interviewed by U.S. consular officers, had submitted additional documentation, had completed a follow-up interview, and had even been informed that "there [were] no reasons to deny [his] visa." Id. at 129. The September 30th deadline passed, however, and no visa was issued. The plaintiff then brought suit, alleging that the State Department had unreasonably delayed processing his Diversity Visa application and had thus deprived him of his chance for legal residency.

As in the instant case, the Government cried mootness. The court agreed, finding that the plain language of the INA meant "that as of 12:00 a.m. on October 1, 2007, [plaintiff] was no longer eligible to receive a diversity visa." Id. at 132. It made no difference that he had "timely fulfill[ed] . . . all of the program's requirements," as "nothing in the statute extends the [Government's] ability to issue visas through the prior year's DV program." Id.; see Mogu, 550

9

F. Supp. 2d at 109 (finding that "[t]he diversity visa program is a limited-time offer" and that "[t]here are no exceptions to this rule"); Gebre v. Rice, 462 F. Supp. 2d 186, 189 (D. Mass. 2006) ("The rule is clear, a diversity visa lottery winner must submit his application and hope to have it adjudicated favorably before the end of the fiscal year for which his diversity visa was issued. No exceptions.").

Nor did it matter that the plaintiff in Keli, as here, raised a claim of equitable tolling of the DV deadline. Regardless of the equities behind the circumstances and causes of the alleged delay, the INA precluded granting relief in the form of a Diversity Visa. Keli, 571 F. Supp. 2d at 136-37; see Lavelle v. U.S. Dep't of Homeland Sec., 2004 WL 1975935, at *5 (N.D. Cal. Sept. 7, 2004) (finding court lacked "power to equitably toll the September 30 deadline established by the diversity visa statute"). "Simply stated," the court concluded, "the language of the statute unequivocally bars the Court from granting the relief sought" and thus "uncategorically renders this case moot." Id.

The reasoning in Keli reflects the reality of the immigration laws governing the DV program and mirrors the circumstances of this case. Here, too, "events [have] outrun the controversy such that the court can grant no meaningful relief." McBryde v. Comm. to Review, 264 F.3d 52, 55 (D.C. Cir. 2001). The 2015 fiscal year has come and gone. Regardless of the merits of Plaintiff's application, the steps he took to procure his visa, the State Department's alleged technical difficulties, or the earthquake in Nepal, the bell has tolled midnight, and this Court cannot unring it. Because any further steps that Defendant might take to process Lu's application are therefore futile, the Court concludes that his claims for injunctive and mandatory relief are moot. See Iddir, 301 F.3d at 500 (finding that INS had duty to adjudicate Diversity Visa applications in reasonable time period, but that "[n]evertheless, the relief the appellants

10

currently seek is illusory, because even if the INS adjudicated the applications today, visas could not be issued").

C. Other Relief

As the Court liberally construes the pleadings of a *pro se* party, it very briefly turns to Lu's requests for other relief. In his Complaint, Plaintiff asks for "60,000 cash compensation because [he] has suffered the nightmare due to the government neglect." Compl., ¶ 46. Unfortunately for Lu, just as none of his potential causes of action – the APA, the INA, and the Mandamus Act – provide a route to injunctive relief, none can provide a jurisdictional basis for money damages in light of the Government's sovereign immunity. The APA explicitly precludes compensatory relief against the Government, see Dep't of the Army v. Blue Fox, 525 U.S. 255, (1999) (money damages unavailable under APA); 5 U.S.C. § 702, and the INA and Mandamus Act likewise provide no grounds for such compensation. See 8 U.S.C. § 1421(c); Omoniyi v. Dep't of Homeland Sec., 2012 WL 892197, at *7 (S.D.N.Y. Mar. 13, 2012) ("[T]he INA does not provide for the recovery of economic losses incurred by an individual whose [immigration] application is denied or delayed."). In the absence of an express waiver of sovereign immunity, Plaintiff has no capacity to seek $60,000. The Court must therefore also dismiss his money-damages claim for lack of subject-matter jurisdiction.

The same is true for Lu's request that the Government "add him on the winning list on the future visa lottery." Compl., ¶ 46. Plaintiff provides no authority for the proposition that the Court could order him so listed. Indeed, to the extent that courts have found jurisdiction to order some form of remedy for DV applicants, it has never been in the form of deeming them prospective lottery winners. See Gebre, 462 F. Supp. 2d at 190 (D. Mass. 2006) (discussing limited number of district court cases in which court issued writ of mandamus for processing of

diversity visas <u>prior</u> to expiration of relevant fiscal year).  In light of such a paucity of support and the clear time limitations of the DV program, the Court determines that it does not have authority to honor Lu's request for relief in the form of future selection in the visa lottery.

**IV.     Conclusion**

The Court acknowledges Plaintiff's frustration in being deemed a "winner" and yet garnering no visa.  In light of the statutory text governing the DV program, however, this Court can order no further action with respect to Lu's lottery victory in 2015.  Defendant's capacity to award a Diversity Visa to Plaintiff expired with that fiscal year, as did the ability of the Court to grant meaningful relief.  On a more optimistic note, it does seem that Plaintiff is mistaken when he states that he cannot be selected in a future Diversity Visa drawing.  <u>See</u> Compl., ¶ 40.  As he was informed in the 2016 State Department letter, Lu may indeed submit his application for future DV program years.  Because there is no relief available regarding his 2015 DV claims, however, the Court will dismiss the instant suit.  A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>February 15, 2018</u>